**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Jeffery Rush, Appellant,

v.

Shady Moss Apartments, Respondent.

Appellate Case No. 2022-001353

―――――――――――――

Appeal From Horry County
Michael G. Nettles, Circuit Court Judge

―――――――――――――

Unpublished Opinion No. 2026-UP-373
Heard April 7, 2026 – Filed July 15, 2026

―――――――――――――

**REVERSED**

―――――――――――――

Mark Paget Fessler, of S.C. Legal Services, of Greenville, and Bronte Marie Anelli, of The Porter Law Group, P.C., of Rock Hill, both for Appellant.

R. Hawthorne Barrett, of Turner Padget Graham & Laney, PA, of Columbia, and Luther Oliver McCutchen, IV, of McCutchen Mumford Vaught O'Dea & Geddie, PA, of Myrtle Beach, both for Respondent.

―――――――――――――

**PER CURIAM:**  Shady Moss Apartments (Shady Moss) brought proceedings to evict Jeffery Rush because of criminal activity—specifically drug-related

activity—committed by his guest, Terrance Melvin. The underlying facts are not in dispute, nor is there a serious dispute that Melvin's conduct qualified as a material lease violation. Instead, this appeal presents the question of whether Rush is entitled to the chance to cure the violation under the relevant federal housing regulation.

The circuit court concluded Rush did not have the right to cure the lease violation. While the regulation is not a model of clarity, we find the circuit court's interpretation cannot be reconciled with the regulation's text. Accordingly, we reverse.

Questions of regulatory interpretation are reviewed de novo. *S.C. Dep't of Revenue v. Blue Moon of Newberry, Inc.*, 397 S.C. 256, 260, 725 S.E.2d 480, 483 (2012) (noting "[t]he construction of a regulation is a question of law" subject to de novo review (quoting 2 Am. Jur. 2d *Administrative Law* § 245)).

"Regulations are interpreted using the same rules of construction as statutes." *Murphy v. S.C. Dep't of Health and Env't Control*, 396 S.C. 633, 639, 723 S.E.2d 191, 195 (2012). "The language [of the regulation] must be read in a sense which harmonizes with its subject matter and accords with its general purpose." *State v. Sweat*, 379 S.C. 367, 375, 665 S.E.2d 645, 649 (Ct. App. 2008), *aff'd as modified*, 386 S.C. 339, 688 S.E.2d 569 (2010); *see also Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 109, 536 S.E.2d 372, 375 (2000) ("It is well settled that [regulations] dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result.").

The relevant regulation is section 3560.159 in title 7 of the Code of Federal Regulations. Subsection (a) authorizes landlords, consistent with the lease, to terminate or refuse to renew a tenancy "only for material non-compliance with the lease provisions, material non-compliance with the occupancy rules, or other good causes." 7 C.F.R. § 3560.159(a) (2026). It expressly provides that material non-compliance with the lease includes the "use, attempted use, possession, manufacture, selling, or distribution of an illegal controlled substance when such activity occurred on the housing project's premises by the tenant" or a guest. § 3560.159(a)(1)(iii). Critically, subsection (a) further provides that "[p]rior to terminating a lease, the [landlord] must give the tenant written notice of the violation and . . . an opportunity to correct the violation." § 3560.159(a).

Subsection (d), entitled "Criminal activity," permits a landlord to "terminate tenancy for criminal activity or alcohol abuse by household members" and incorporates various Housing and Urban Development regulations. 7 C.F.R. § 3560.159(d)

(2026). The first incorporated HUD regulation applies to "drug criminals" and states "[t]he lease must provide that drug-related criminal activity engaged in on or near the premises by any tenant, household member, or guest . . . is grounds for [the landlord] to terminate tenancy." 24 C.F.R. § 5.858 (2026).

Shady Moss has consistently approached this case as if it were relying on a material breach of the lease for drug-related violations. The notices provided to Rush cited the lease provisions concerning drug violations—not the lease provisions or HUD regulation concerning criminal activity in general. The notices to Rush also advised that while his lease was being terminated for a material breach or other good cause, Rush would not be given an opportunity to cure the violation. Although it is not critical to our analysis, Shady Moss's position is difficult to square with subsection (a)'s twin features of allowing eviction for material lease violations but also explicitly granting tenants a right to cure material lease violations. *See* § 3560.159(a).

The circuit court concluded that no right to cure exists when drug-related criminal activity occurs in a tenant's apartment. But regulatory provisions should be read to work in concert, not so that one subsection quietly repeals another. *See Rivas*, 342 S.C. at 109, 536 S.E.2d at 375 (explaining regulations related to the same subject matter must be construed together "to produce a single, harmonious result"). The latter is precisely the practical result of the circuit court's interpretation. Reading subsection (d) to effectively nullify the very rights created by subsection (a) does not harmonize the subsections; it pits one provision against the other. While we candidly admit we are unable to fully discern how the various subsections of the regulation are designed to work in every circumstance, we respectfully do not see how the circuit court's ruling can be harmonized with the text of subsection (a), which plainly establishes a right to cure material lease violations and then plainly lists drug-related criminal activity as a material lease violation.

Our holding is bolstered by the fact that if a right to cure is ever appropriate for criminal activity, it seems especially warranted here because there is no allegation that Rush, the tenant, or a member of his household engaged in any criminal activity whatsoever. *See Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308 (4th Cir. 1992) (explaining "the mere use or possession of narcotics would not in every case constitute an extraordinary situation permitting federal law enforcement officers to summarily remove all persons occupying the housing unit where the activity had occurred"). On this record, the concept of "curing" the criminal activity is neither illogical nor impossible. An obvious remedy for the violation would be excluding the offending guest from the premises and securing a pledge from Rush

that similar conduct would not occur again. *See id.* (noting "the government's objective in evicting drug dealers from public housing may be accomplished by different procedures, namely: by the filing of a lis pendens along with a restraining order or bond requirement" (citation modified)).

Because the circuit court's ruling cannot be reconciled with the plain language of subsection (a), which expressly affords a right to cure conduct that both the regulation and the lease itself identified as a material breach, we reverse.

**REVERSED.**

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**